**David VOGEL, Petitioner-Appellant,**

v.

**Donald PERCY, Respondent-Appellee.**

No. 82–1709.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1982.

Decided Oct. 29, 1982.

844

Steven P. Weiss, Asst. State Public Defender, Madison, Wis., for petitioner-appellant.

Michael R. Klos, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before CUMMINGS, Chief Judge, BAUER and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District of Wisconsin denying petitioner David Vogel's

1. Lindsey entered a guilty plea before petitioner's trial.

2. *See* Wis.Stats. § 908.01(4) which provides: 908.01(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if: (a) *Prior state-*

request for habeas corpus relief. We find Vogel's petition to be without merit and affirm.

I

On December 7, 1976, two men wearing nylon stocking masks to conceal their faces robbed a market in Beloit, Wisconsin. One of these men was armed with a knife. The men were later identified as the petitioner's brother, Daniel Vogel (Daniel), and William Lindsey (Lindsey). The robbery occurred shortly before midnight; Lindsey was arrested and taken into custody within a few hours. Approximately ten hours after the robbery, police took a question and answer statement from Lindsey. This signed, unsworn statement implicated petitioner in the planning and execution of the robbery. According to Lindsey's statement, petitioner's role in the armed robbery included: (1) suggesting that the market be robbed; (2) driving Daniel and Lindsey to the market; (3) purchasing the nylon stockings used to conceal the robbers' identities; and (4) arranging to pick up Daniel and Lindsey after the robbery.

Petitioner Vogel subsequently was charged as a party to the crime of armed robbery in violation of Wisconsin Statutes §§ 943.32(2) and 939.05(2)(b), and with concealing identity in violation of § 946.62.

At petitioner's trial, Lindsey testified as a witness for the state.[1] Lindsey fully related the events of the night of the robbery. Contrary to the state's expectation, however, Lindsey failed to testify to petitioner's involvement. In fact, Lindsey testified that he and Daniel planned the robbery themselves sometime after petitioner purchased a pair of pantyhose for them, and dropped them off in the vicinity of the market. The state then sought to introduce as substantive evidence[2] the question and answer statement Lindsey had given the police on

*ments by witness:* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

1. Inconsistent with his testimony ....

the morning following the robbery. Over defense counsel's objection, the prosecutor read the statement to Lindsey asking whether Lindsey recalled making each response. Throughout the reading of his signed statement Lindsey maintained that he had no memory or knowledge of making the statement—Lindsey attributed his lack of memory to having been intoxicated at the time the statement was taken.[3]

Additional witnesses for the state positively identified petitioner Vogel as having purchased a pair of nylon pantyhose the evening of the robbery;[4] as having been in the vicinity of the robbery under suspicious circumstances at the time the market alarm was sounded;[5] and as having asked a friend to dispose of certain clothing approximately two hours after the robbery.[6]

Vogel then testified in his own behalf. He admitted the substance of the statements against him, but offered exculpatory explanations for each of his acts on the night of the robbery.

The jury found Vogel guilty and a judgment of conviction was entered on June 1, 1977. Vogel's conviction was affirmed by both the Wisconsin Court of Appeals, District IV, 87 Wis.2d 541, 275 N.W.2d 180 (1978), and the Wisconsin Supreme Court, 96 Wis.2d 372, 291 N.W.2d 838 (1980).

Vogel then petitioned the District Court for the Eastern District of Wisconsin for the issuance of a writ of habeas corpus. It is the denial of this petition that is before us on appeal.

Vogel's petition for a writ of habeas corpus raises two issues: (1) whether petitioner's Sixth Amendment right of confrontation[7] was violated by the admission of Lindsey's unsworn, prior inconsistent statement; and (2) whether the admission of Lindsey's unsworn statement as substantive evidence violated petitioner's Fifth and Fourteenth Amendment due process rights.

## II

■ Since *California v. Green,* 339 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the law is well settled that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* at 158, 90 S.Ct. at 1935; *accord United States v. Shoupe,* 548 F.2d 636 (6th Cir. 1977); *United States ex rel. Thomas v. Cuyler,* 548 F.2d 460 (3d Cir. 1977); *United States v. Leslie,* 542 F.2d 285 (5th Cir. 1976). Further, it is not relevant under the confrontation clause that the out-of-court statement is unsworn.[8]

■ Petitioner Vogel contends that admission of Lindsey's prior inconsistent statement nonetheless violated Vogel's Sixth Amendment right of confrontation because Lindsey's lack of memory concerning the statement precluded full and effective cross-examination. The *Green* Court declined to reach the issue of whether a witness' genuine memory loss can so hamper cross-examination as to raise a confron-

---

**3.** We note, however, that at the time his statement was taken Lindsey had been in custody for seven hours. Further, Lindsey had no trouble recalling other events of the night in question—events that occurred more proximately to his alcohol consumption.

**4.** This testimony, by the store clerk who sold the pantyhose, agreed with both Lindsey's statement and petitioner Vogel's own testimony.

**5.** Testimony of Beloit Police Department Patrolman Kevin Connors.

**6.** The friend further testified that petitioner told her his brother had been involved in an armed robbery that evening.

**7.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S.Const. amend. VI.

**8.** The subsequent opportunity for cross-examination at trial with respect to both present and past versions of the event, is adequate to make equally admissible, *as far as the Confrontation Clause is concerned,* both the casual, off-hand remark to a stranger, and the carefully recorded testimony at a prior hearing.
*California v. Green,* 399 U.S. 149, 168, 90 S.Ct. 1930, 1940, 26 L.Ed.2d 489 (1970) (emphasis added).

tation problem. We do not reach this issue because Lindsey's lapse of memory here was "so selective as to be incredible." *United States v. Shoupe,* 548 F.2d 636, 643 (6th Cir. 1977). Lindsey testified at trial as to the events preceding the robbery, the robbery itself, and his subsequent attempt to elude the police. Yet Lindsey maintained that he was unable to recall his statement, allegedly because he was intoxicated when the statement was taken.

Petitioner was free at trial to cross-examine Lindsey regarding the circumstances of Lindsey's interrogation. The jury, faced with Lindsey's inconsistent statements, could have concluded that Lindsey's alleged intoxication undermined the reliability of his out-of-court statement. That the jury apparently found Lindsey's prior statement more credible than his in-court testimony indicates

> not the unavailability of cross-examination, but rather the incredulous character of Lindsey's claim that he was still intoxicated more than ten hours after he had taken his last drink and after he had, in the meantime, robbed a store, successfully eluded the police, returned home, and then led the police back to where he had dropped the money taken in the robbery.

*Vogel v. State,* 96 Wis.2d 372, 392, 291 N.W.2d 838, 848 (1980).

Although petitioner's cross-examination of Lindsey might have been more fruitful if Lindsey had not suffered a memory lapse as to his prior inconsistent statement, the petitioner was afforded adequate opportunity to test Lindsey's lack of recall. We conclude that petitioner's opportunity to question Lindsey regarding the circumstances attendant to his interrogation satisfied the "full and effective cross-examination" requirement of *Green.* We therefore hold that the admission of Lindsey's prior inconsistent statement did not violate petitioner's Sixth Amendment right of confrontation.

**9.** The Wisconsin Supreme Court concluded that Lindsey's prior inconsistent statement was properly admitted as substantive evidence against petitioner in conformance with Wis. Stats. § 908.01(4). *Vogel v. State,* 96 Wis.2d

### III

Petitioner also claims that the admission of Lindsey's unsworn statement as substantive evidence violated petitioner's Fifth and Fourteenth Amendment due process rights.[9]

Petitioner relies on *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1944), for the proposition that the admission of an unsworn, out-of-court statement as substantive evidence in a criminal case is violative of due process because it "would allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded." *Id.* at 153–54, 65 S.Ct. at 1452–53 [footnotes omitted]. We note, however, that the due process issue was not before the Court in *Bridges.* Rather, that case dealt with procedural evidentiary requirements intended for the protection of aliens. *Id.* at 154, 65 S.Ct. at 1452; *Green,* 399 U.S. at 163 n. 15, 90 S.Ct. at 1937 n. 15 (1970).

The due process considerations attendant to the admission of a witness' prior inconsistent statement as evidence in a criminal case were addressed by the Supreme Court in *California v. Green, supra.* The Court cautioned that *Bridges* could not be read as "declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted." *Green,* 399 U.S. at 163 n. 15, 90 S.Ct. at 1937 n. 15; *accord United States v. DeSisto,* 329 F.2d 929, 933 (2d Cir.), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

In *United States v. Leslie,* 542 F.2d 285 (5th Cir. 1976), the Fifth Circuit established guidelines to determine whether substantive use of a prior inconsistent statement would comport with due process. The court held that a prior inconsistent statement could be constitutionally admitted as substantive evidence where: (1) the declar-

372, 291 N.W.2d 838 (1980). The issue before this court is limited to whether the statutorily proper admission of Lindsey's statement was nonetheless an unconstitutional violation of petitioner's due process rights.

ant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admitted making the statement; and (5) there was some corroboration of the statement's reliability. *Id.* at 290–91. We believe that the application of these guidelines will safeguard due process by "prevent[ing] convictions where a reliable evidentiary basis is totally lacking." *Green,* 399 U.S. at 163 n. 15, 90 S.Ct. at 1937 n. 15. Therefore we adopt these guidelines and apply them to Lindsey's prior inconsistent statement to determine whether the admission of that statement violated petitioner Vogel's due process rights.

First, we note that declarant Lindsey was available for cross-examination. Despite Lindsey's purported memory lapse, we held in Part II, *supra,* that petitioner was afforded the opportunity for "full and effective cross-examination." This clearly satisfies the first element of *Leslie.*

Second, Lindsey's statement was made on the morning following the robbery. The opportunity for fabrication and concomitant problems of reliability are minimized where a statement is given to the police promptly following the events related therein. Further, the statement was immediately transcribed, and Lindsey admits having signed "some papers" shortly after the interrogation. On these facts the second *Leslie* element has also been satisfied.

The third *Leslie* element, knowing and intelligent waiver of the right to remain silent, has also been met. Although Lindsey testified at Vogel's trial that he was so intoxicated at the time of his interrogation that he had no recollection of his statement, petitioner has made no claim on appeal that Lindsey's statement was improperly admitted because it was not knowingly and voluntarily made. In the absence of any claim to the contrary, and in light of the statement's admission at trial, we find that Lindsey knowingly and intelligently waived the right to remain silent.

The fourth *Leslie* element requires that the declarant admit to making the prior inconsistent statement. Satisfaction of the fourth *Leslie* element is problematic because Lindsey neither admits nor denies making the statement; Lindsey testified simply that he had no present recollection of making it. Nevertheless, we hold that under the facts of this case Lindsey's failure to admit to making the prior inconsistent statement cannot defeat the constitutionality of admitting that statement as evidence. The statement was verified by Lindsey's signature. Further, both Lindsey and the officer who took the statement testified to the circumstances surrounding Lindsey's interrogation. Finally, we may infer that the jury believed the prior statement to be Lindsey's, because implicit in the verdict was the jury's finding that Lindsey's prior statement was more credible than his trial testimony.

We conclude that the fourth element of *Leslie* is satisfied here by the jury's implicit finding that the prior inconsistent statement was indeed made by Lindsey: a finding which is not against the manifest weight of the evidence. To hold otherwise would invite selective recall in any criminal case where the admissibility of a prior inconsistent statement as substantive evidence is at issue.

The final element of *Leslie* requires corroboration of the statement's reliability. There is ample corroborating evidence in this case. Petitioner did not deny his presence near the crime scene under suspicious circumstances, thus corroborating Lindsey's statement that petitioner was to aid in the getaway. A store clerk positively identified Vogel as having purchased nylon pantyhose on the evening of the robbery; Lindsey's statement agreed on this point and implicated the pantyhose in the commission of the robbery. There was also evidence concerning petitioner's attempt to dispose of certain clothing in the hours following the robbery. This evidence sufficiently enhanc-

es the reliability of Lindsey's statement to satisfy the final *Leslie* guideline.[10]

We believe that adherence to the *Leslie* guidelines satisfies the dictate of the Supreme Court to "prevent convictions where a reliable evidentiary basis is totally lacking." *Green,* 399 U.S. at 163 n. 15, 90 S.Ct. at 1937 n. 15. Having applied the *Leslie* guidelines to the case before us, we conclude that admission of Lindsey's unsworn statement as substantive evidence did not violate due process.[11]

### IV

The admission of Lindsey's prior, inconsistent statement did not violate either petitioner Vogel's Sixth Amendment confrontation right or his due process right to a fair trial. Accordingly, we hold that the district court's order denying Vogel's petition for a writ of habeas corpus is

AFFIRMED.

---

**10.** Petitioner further argues that due process was violated because Lindsey's unsworn statement was the primary evidence against Vogel. We agree with the district court that Vogel's conviction was not primarily based on Lindsey's unsworn statement. There was sufficient independent evidence to link Vogel to the robbery and sustain a conviction under Wisconsin's party-to-a-crime statute. We do not address this issue separately because this same evidence provides the requisite indicia of reliability for admission of Lindsey's statement under the *Leslie* guidelines.

**11.** Petitioner Vogel has cited no case which compels an opposite result. The two cases most heavily relied on by petitioner, for example, can be distinguished on their facts.

In *United States v. Shoupe,* 548 F.2d 636 (6th Cir. 1977), the Sixth Circuit held that the defendant's due process rights were violated by the prosecutor's recitation of a witness' entire disavowed, unsworn prior statement. We note, however, that the statement in *Shoupe* was not recorded; was not transcribed until six days after it had been taken; was never signed by the declarant; and lacked sufficient corroboration to be deemed reliable. Thus, an application of the *Leslie* guidelines similarly would have foreclosed the statement's admission.

In re *Miguel L.,* Crim. 22605 (Cal. Aug. 16, 1982), itself recognizes that admission of an extrajudicial statement may not violate due process where there are sufficient corroborating facts to indicate the statement is reliable. In that case, however, the extrajudicial statement was deemed improperly admitted because there was no opportunity for effective cross-examination of declarant. The *Leslie* guidelines, adopted in this case, also recognize the importance of cross-examination as a due process safeguard where an extrajudicial statement is admitted.