426 A.2d 569

**COMMONWEALTH of Pennsylvania,**

v.

**Foster Lee TARVER, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 19, 1980.

Decided Feb. 4, 1981.

Bruce D. Foreman, Harrisburg, for appellant.

Marion E. MacIntyre, First Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

In this appeal we are presented with a collateral attack upon a judgment of sentence entered April 2, 1971 by the Court of Common Pleas of Dauphin County requiring appellant to serve a term of imprisonment of not less than 10 nor more than 20 years for the crime of aggravated robbery. At the time of the imposition of this sentence, the court directed that it be computed consecutively with a life sentence that had been previously imposed under a murder indictment arising from the same criminal episode. We find that the imposition of this second punishment for the charge of robbery violated the multiple punishment aspect of the Double Jeopardy Clause of the Fifth Amendment.

On the morning of December 2, 1968, a branch bank of the Dauphin Trust Company in Harrisburg was robbed. During the course of the commission of the robbery a patron of the bank was shot and killed. Appellant and two other persons were apprehended and appellant was indicted for murder on December 12, 1968. Almost two months later (February 3, 1969) he was also indicted on charges of aggravated robbery, conspiracy, and unlawful carrying of firearms, as a result of the same incident. On May 2, 1969, appellant was arraigned on all charges, entered a plea of not guilty to each bill of indictment and requested trial by jury.

On June 2, 1969, appellant changed his plea from not guilty to guilty on the murder indictment. Three days later, a three-judge panel conducted a degree of guilt hearing at which it was determined appellant was guilty of murder of the first degree, based upon a finding that the killing was perpetrated in the course of and was in furtherance of the robbery.[1] The penalty was set at death. This Court affirmed the conviction. *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971) (*Tarver I*). On February 19, 1971, the death penalty was modified by the court below to life imprisonment.

1. Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701. (Repealed June 6, 1973) (current version at 18 Pa.C.S.A. § 2502).

Approximately six months after the entry of the sentence on the guilty plea, appellant was rearraigned on the remaining non-homicide charges and reaffirmed his plea of not guilty. The trial on these charges commenced February 11, 1970 and appellant was found guilty by a jury of all charges. Post-trial motions were dismissed and sentence imposed under the robbery indictment, as previously stated. An appeal was filed with the Superior Court which resulted in an affirmance. *Commonwealth v. Tarver*, 221 Pa.Super. 797, 291 A.2d 899 (1972). Still represented by trial counsel, appellant petitioned this Court for allowance of an appeal. We granted review and thereafter affirmed the Superior Court in *Commonwealth v. Tarver*, 467 Pa. 401, 357 A.2d 539 (1976) (*Tarver II*).

On March 14, 1978, appellant, pro se, filed a Post Conviction Hearing Act[2] petition wherein a violation of double jeopardy was asserted. The petition also raised the question of the effectiveness of previous counsel. Counsel was appointed to assist him in that proceeding. The petition was denied, without hearing, by the P.C.H.A. court on April 26, 1978. That denial was affirmed by the Superior Court relying upon *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). We again granted review.

The specific question raised by the instant double jeopardy claim is whether the imposition of sentence on a constituent offense is impermissible where the offender has previously been sentenced upon the greater offense. To begin consideration of this question, it will be helpful to identify certain basic principles that govern this area of the law.

The double jeopardy protection of the Fifth Amendment of the United States Constitution has been made applicable to the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). That clause provides: " . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . . " The constitutional prohibi-

2. 19 P.S. § 1180–1 *et seq.* (Supp.1978–79) (Repealed April 28, 1978) (current version at Pa.R.Crim.P., Rules 1501 through 1506).

tion of double jeopardy has been held to consist of three separate guarantees: (a) protection against a second prosecution for the same offense after an acquittal; (b) protection against a second prosecution for the same offense after conviction; and (c) protection against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *U. S. v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Supreme Court in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1975) noted that the double jeopardy clause "was designed originally to embody the protection of the common law pleas of former jeopardy . . ., the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors." *Id.* at 165, 97 S.Ct. at 2225. The double jeopardy provision does not restrain the legislature in its role in defining crimes and fixing penalties. Its intendment is to prevent courts from imposing more than one punishment under the legislative enactment and restraining prosecutors from attempting to secure that punishment in more than one trial. *Brown v. Ohio, supra.* Where consecutive sentences are imposed at a single trial, double jeopardy prevents the court from exceeding its legislative authorization by imposing multiple punishments for the "same offense." *Brown v. Ohio, supra; Gore v. U. S.*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bell v. U. S.*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ex parte Lange*, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872 (1873).

We must begin our analysis by determining whether the robbery was the same offense as the felony-murder. The following test for determining when two charges constitute the "same offense" was first articulated by the U.S. Supreme Court in *Blockburger v. U. S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

Long before the *Blockburger* articulation of the "same offense" rule, the U.S. Supreme Court had recognized the double jeopardy implication where there was an attempt to have a successive prosecution or the imposition of separate sentences for a constituent offense following the conviction of the greater offense. In *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Court held that a person who had been convicted of a crime having separate elements included in it may not subsequently be tried for a lesser included offense. In that matter the Court noted "that the trial court was without authority to give judgment *and sentence...*" on the lesser charge of adultery where there had been a previous conviction for the greater charge of unlawful cohabitation.

In *Brown v. Ohio, supra,* the Court specifically discussed the applicability of the *Blockburger* test to instances where the concern was a constituent offense. In *Brown* the Court was faced with the question of the appropriateness of a separate sentence for the theft of an automobile following the imposition of sentence upon the lesser included offense of operating the vehicle without the owner's consent. Commenting upon the *Brown* holding, the Court said, in a later decision in *Illinois v. Vitale, supra,* "holding that the second prosecution was barred, by the Double Jeopardy Clause and the Fourteenth Amendment, we observed that 'the prosecutor who has established joyriding need only prove the requisite intent in order to establish auto theft'" but we also noted that "the prosecutor who has established auto theft necessarily has established joyriding as well."

Both observations were essential to the *Brown* holding. Had the State been able to prove auto theft, without also proving that the defendant took, operated or kept the auto without the consent of the owner—if proof of the auto theft had not necessarily involved proof of joyriding—the successive prosecutions would not have been for the "same offense" within the meaning of the Double Jeopardy Clause. *Illinois v. Vitale, supra,* 447 U.S. at 417, 100 S.Ct. at 2266.

■ The only distinction between the *Brown* decision and the one before us, assuming that we find that robbery is in fact a constituent offense of the felony-murder, is that in *Brown* the sentence initially was imposed on the lesser offense and the double jeopardy violation was found when there was a subsequent attempt to try the accused for the greater. *Brown* points out that such a distinction is inconsequential;—"whatever the sequence may be, the Fifth Amendment forbids successive prosecutions and cumulative punishment for a greater and lesser included offense." *Brown v. Ohio, supra*, at 169, 97 S.Ct. at 2227.

Another decision which sheds light on our instant inquiry is *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). In *Harris* the Court was unanimous in its conclusion that a defendant's conviction for felony-murder based on a killing in the course of an armed robbery barred a subsequent prosecution against the same defendant for the robbery. In further explication of its *Harris* holding, the Court in *Illinois v. Vitale, supra*, stated:

> The Oklahoma felony murder statute on its face did not require proof of a robbery to establish felony murder; other felonies could underlie a felony murder prosecution. But for the purposes of the double jeopardy clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, we treated a killing in the course of a robbery as itself a statutory offense, and the robbery as a species of lesser included offense.

*Id.*, 447 U.S. at 420, 100 S.Ct. at 2267.

■ From the foregoing authority, it is apparent that the conclusion of the majority of this Court in *Commonwealth v. Sparrow, supra*, holding that robbery was a discrete offense, for purposes of double jeopardy, is clearly erroneous.[3] *See*

3. In *Sparrow* the majority focused on the doctrine of merger and concluded that the underlying felony of robbery did not merge with the felony-murder. Without further explication, that opinion also concluded that no double jeopardy problem was posed. This writer dissented in *Sparrow*. *See Commonwealth v. Sparrow*, 471 Pa. 490,

*also, Whalen v. U. S.,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Accordingly, we now expressly overrule our earlier decision in *Commonwealth v. Sparrow, supra.*

Under the 1939 Penal Code, which was in effect at the time of this crime, it is clear that the underlying felony of robbery was a constituent offense of the felony-murder and, therefore, the "same offense" under the terms of the *Blockburger* formulation. Under the 1939 Penal Code, no statutory definition was provided for the crime of murder. The Code merely separated that offense into two degrees—murder of the first degree and murder of the second degree. Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701. Under the common law of this Commonwealth, murder was defined as a malicious killing. *Commonwealth v. Drum,* 58 Pa. 9 (1869). *See also, Commonwealth v. Ladd,* 402 Pa. 164, 166 A.2d 501 (1961); *Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958); *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A.2d 125 (1950). The malice could be either expressed or implied. *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972); *Commonwealth v. Chermansky,* 430 Pa. 170, 242 A.2d 237 (1968); *Commonwealth v. Lawrence,* 428 Pa. 188, 236 A.2d 768 (1968). Malice was imputed because of the felony under the common law doctrine of felony-murder.

... the doctrine of felony-murder became firmly imbedded in the common law. As applied in Pennsylvania, common law felony-murder 'is a means of imputing malice where it may not exist expressly. Under this rule, the malice necessary to make a killing, even an accidental one, murder, is constructively inferred from the malice incident to the perpetration of the initial felony.' *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 224–25, 261 A.2d 550, 553 (1970). *Commonwealth v. Yuknavich,* 448 Pa. 502, 506, 295 A.2d 290, 292 (1972).

Additionally, there is a second reason under our law which also compels the conclusion that the robbery was a constitu-

516–522, 370 A.2d 712, 726–29 (1977) (dissenting opinion, Nix, J. joined by Roberts, J.).

ent offense and, therefore, the "same offense" under the *Blockburger* test. As previously stated, the 1939 Penal Code separated murder into two degrees with murder of the first degree providing for an enhanced penalty. First degree murder occurred where the killing was willful, deliberate and premeditated. It also occurred where the killing was in the perpetration of one of five enumerated felonies, one of these felonies being robbery. In this instance, the basis for the finding of murder of the first degree was the proof that the killing occurred during the course of the robbery. Thus, in this case, the robbery not only supplied the malice to establish murder, it also supplied the aggravating factor necessary to sustain murder of the first degree.

Having decided that Mr. Tarver has raised a meritorious double jeopardy violation, we must now determine whether he is entitled to relief under the Post Conviction Hearing Act.[4] The Commonwealth urges us to find that appellant's right to raise the claim is foreclosed by section 4 of the Act. The appellant responds by asserting that the question was not raised and that prior counsel's failure to raise and properly preserve the question constituted ineffective assistance, thus satisfying the exceptional circumstances to the section 4(b) bar. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Waddy*, 463 Pa. 426, 345 A.2d 179 (1975); *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973).

We will first discuss our reasons for the rejection of the claim of ineffective assistance of counsel. The charge of ineffectiveness is based upon counsel's failure to assert the double jeopardy objection that we have here found to be meritorious. However, the record reflects that at the earliest possible stages, a complaint was made by counsel on appellant's behalf protesting the attempt to try and convict him on the robbery after his conviction and sentence on the murder. Prior to trial on these offenses, appellant unsuccessfully moved to quash the indictment for robbery. This argument was pursued in the appeal to the Superior Court

4. *See* n.2, *supra*.

330

and precluded in the grant of allocatur in *Tarver II*. *See id.* at 404, n.2 & n.4.[5] Where counsel has raised the issue at every possible stage, he cannot be accused of ineffectiveness because those courts before which it was asserted failed to accept its validity.

█ Appellant argues that the ineffectiveness charge was nonetheless justified because counsel employed a merger concept to raise the complaint that a subsequent trial and sentence for robbery would be impermissible. It is contended that counsel should have clarified the distinction between the evidentiary concept of merger and a double jeopardy violation. While we now agree with the legitimacy of the distinction, we cannot say that prior counsel's failure to articulate it amounted to ineffectiveness of counsel. Under the law at the time of prior counsel's stewardship, it was the prevalent view in this jurisdiction that a resolution of the merger question was determinative of the double jeopardy complaint. *Commonwealth v. Sparrow, supra.* Having diligently pursued the merger theory, it cannot be said that prior counsel acted without reasonable basis.

█ Having concluded that there was no waiver and consequently the effectiveness of counsel is not at issue, we turn to the final question whether appellant is foreclosed under section 4(a). Section 4(a) provides:

(a) For the purpose of this act, an issue is finally litigated if:

(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue, and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or

(2) The Superior Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue and the

5. This is the basis for the Commonwealth's argument that the issue has been finally litigated under section 4(a). The allocatur grant for *Tarver II* was confined to a consideration of the *Campana* question. *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).

petitioner has knowingly and understandingly failed to avail himself of further appeals; or

(3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

Here the issue was raised at every step, thus the critical question is whether this Court ruled on the merits of the question. The Commonwealth suggests that our affirmance in *Tarver II* forces the issue to be resolved in its favor. We cannot agree. In *Tarver II* there was a limited grant of review and we considered only the question that we directed the parties to present to us. As has been stated, we did not consider this issue in our decision in *Tarver II*. As to this issue, the case stands in the posture of a denial of review by this Court. Since a finding of finally litigated under section 4(a) requires a showing that the Supreme Court has ruled *on the merits* of the issue, *see Commonwealth v. Holly*, 483 Pa. 371, 396 A.2d 1215 (1979); *Commonwealth v. Rightnour*, 469 Pa. 107, 364 A.2d 927 (1976); *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A.2d 793 (1968), that requirement is not met by a denial of allocatur.

Accordingly, the Order denying post conviction relief is reversed and the judgment of sentence entered upon the robbery conviction is vacated and appellant discharged under that bill of indictment.

LARSEN, J., filed a dissenting opinion in which KAUFFMAN, J., joined.

LARSEN, Justice, dissenting.

I dissent. Appellant committed two distinct and discrete crimes—aggravated robbery and murder—and he should be sentenced on both. In *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977), this Court held that aggravated robbery is not a "necessary ingredient" of murder, and that double jeopardy does not bar conviction and sentencing on both offenses. I believe *Sparrow* was correctly decided, and that the majority has erred in ignoring this clear precedent.

Consequently, I would affirm the judgment of sentence.

KAUFFMAN, J., joins in this dissenting opinion.